No. 12,830.

CHARLES H. HAMILTON VS. HIS CREDITORS.

SYLLABUS.

ON MOTION TO DISMISS.

1. Where a devolutive appeal was taken from a judgment approving a syndic's account, and sometime afterward a judgment was rendered by the court of the first instance, discharging the syndic;
   HELD: On a motion to dismiss the appeal—whatever effect the judgment may have on the proceedings hereafter, it does not offer good ground to dismiss the appeal.
2. A motion to dismiss an appeal having been denied, can not be renewed or thereafter treated as a pending motion, but this court, in considering a case upon its merits, may deal with such denial as an interlocutory order, which may, then, be reviewed.
3. The distribution of the fund and the discharge, by the lower court, of the syndic, pending devolutive appeals from a judgment on oppositions to account, do not justify the dismissal of such appeals.
4. The test of the appellate jurisdiction of this court where creditors have litigated "*in concurso*," is the amount of the fund to be distributed.
5. Where a motion to dismiss an appeal, made when a case is called for trial on its merits, on the ground of acquiescence, involves a question of fact, which would necessitate the remanding of the case; and when, the case being heard on the merits, it appears that the appellant would not be entitled to a reversal of the judgment, the motion to dismiss will be denied and the case decided on its merits.

ON THE MERITS.

6. Creditors in insolvency proceedings claiming privileges to the prejudice of others, must establish their claims by satisfactory evidence. And a foreign creditor, claiming a vendor's privilege, must prove a contract entitling him to it, and identify the goods.
7. An assessment on "*Merchandise and Stock in Trade*" gives the city of New Orleans no privilege on the proceeds of the "*counters, fixtures, and wooden partitions*" in a barroom.

ON APPEAL from the Civil District Court, for the Parish of Orleans.  *Theard, J.*

*Dinkelspiel & Hart* for Frank Marquez, Civil Sheriff, Syndic, Appellee.

*D. M. Sholars,* for Paul Jones & Co., Opponents, Appellants.

*Robert G. Dugue* for Morris Building and Land Improvement Association, Limited, Opponent, Appellee.

*Samuel L. Gilmore,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney, for City of New Orleans, Opponent, Appellant.

*Harry H. Hall* for Mrs. Widow James Fahey, Opponent, Appellee.

*Rouse & Grant, in propria persona,* Opponents, Appellees.

*F. C. Zacharie* for C. Harrison Parker, State Tax Collector, Opponent and Appellee.

Submitted, on motion to dismiss, November 23, 1898.
Motion to dismiss overruled December 5, 1898.

### ON THE MERITS.

Argued and submitted April 20, 1899.
Opinion handed down May 1, 1899.

The opinion of the court, on motion to dismiss, was delivered by
BREAUX, J.  The syndic of the creditors of Charles H. Hamilton filed an account of the affairs of the insolvency in his charge as syndic.  Oppositions to the account were interposed by several of the creditors.

On the 11th day of March, 1898, the oppositions were heard.  The provisional account was amended as ordered, and it was approved by the judgment of the court.

On the 26th day of April, 1898, Paul Jones & Co., who alleged that they are creditors of the syndic, moved for and obtained an order granting them a devolutive appeal returnable to this court.

On May 2nd, following, their appeal was filed.

On this same day, the city of New Orleans, also an opponent to the account of the syndic, applied for and obtained an order of devolutive appeal, without bond, as the law authorizes.

In this court, the syndic, appellee, moved to dismiss the appeal, alleging that his account was approved by a judgment in the court *a qua;* that the judgment had become executory; and for that reason that it was executed by him; that he had paid out, in accordance with authority granted by the judgment, the money of the estate of the insolvent.

That he was granted a discharge by the Civil District Court, as shown by a copy of the judgment which he annexed to his motion for the dismissal; and that there was no longer any person before the court competent to represent the appellee.

A copy of the judgment was annexed to the motion to show that the syndic was discharged, as he alleged.

The appeals being devolutive, there is no question here of staying the proceedings in the District Court.

Whether the appellants can still apply to have the judgment reversed from which they have appealed, presents the issue before us for determination.

Repeated decisions have well settled the rule of practice, that the court *a qua* can not affect the appeal by any judgment it may render.

After the appeal lodged here, it passed out of the jurisdiction of the lower court.

Any order it may grant can not have the effect of compelling the court to dismiss the appeal.

The appeal having been granted, and it being before us, we must decline to dismiss it upon proof of a judgment of the court which has no longer jurisdiction in the matter of the appeal.

The propositions argued by counsel in the briefs for syndic, are:

First—That the syndic was regularly discharged, and that in consequence the appeal must be dismissed, as he is a necessary and interested party in all proceedings attacking his account.

Second—That the court is without jurisdiction *ratione materiae.* With reference to the first proposition it may well be that the syndic has been regularly discharged in the lower court, and yet be a party to the appeal. He, as an appellee, moved to dismiss the appeal. He is an appellee, and the judgment of the lower court, discharging him,

can not, of itself, have the effect claimed in motion to dismiss the appeal.

With reference to the second proposition, that the court is without jurisdiction *ratione materiae.* The judgment of the lower court can not have the effect of maintaining a claim so as to divest the Supreme Court of its jurisdiction, if it had jurisdiction when the appeal was lodged before that tribunal. A case before it can not be disturbed by the subsequent judgment of the lower court discharging the appellee.

. Conceding all that is claimed by appellee, it may be that the creditors, who are appellants, if their demand should be granted, would have rights against the other creditors overpaid, despite the discharge of the syndic.

The motion to dismiss is denied.

## RECONSIDERATION OF MOTION TO DISMISS.

MONROE, J. The syndic filed an account May 10th, 1897, presenting for distribution a fund exceeding $2,000. Oppositions were filed by several creditors, and, among others, by Paul Jones & Co., and the city of New Orleans.

Paul Jones & Co. claimed a vendor's privilege, for $401.77, on the proceeds of certain goods, and objected to the amount and rank of certain attorneys' and notary's fees. The fees complained of were reduced by the court *a qua,* apparently to the satisfaction of the opponents, who have confined themselves in this court to the question of their privilege.

The city of New Orleans claimed taxes for several years, in part on real estate and in part on movables, and its claim was allowed in part and dismissed in part. The complaint here relates to a claim for $50. tax of 1894, assessed on movable property, with respect to which the opposition was dismissed.

There was judgment amending and homologating the account, March 11th, 1898, and the opponents above mentioned appealed, devolutively, April 26th and May 2nd, 1898, respectively.

There being no other appeals, the syndic proceeded to make a distribution, agreeably to the judgment of the lower court; and having completed the same, was discharged November 22nd, 1898. The following day he appeared here by counsel, and moved to dismiss the pending appeals, on the grounds that the fund to which they related had been distributed, and he having been discharged, there was no

appellee before the court. These grounds were duly considered, and the motion to dismiss was denied, by judgment of this court, December 5th, 1898.

When the case was called for trial, upon its merits, on April 20th, 1899, counsel urged a reconsideration of the judgment mentioned, and has since urged it by brief. On the same day another motion to dismiss the appeal of the city of New Orleans was filed on behalf of Mrs. Widow Fahey. In this motion it is alleged that the only question involved in said appeal is whether or not the city shall be paid the amount claimed by it by preference ·out of the proceeds of property on which the mover was accorded a lessor's privilege, and it is further alleged that the city has acquiesced in the judgment appealed from by receiving the amount for which judgment was rendered in its favor.

## ON THE MOTIONS TO DISMISS.

The motion made on behalf of the syndic having been denied, could not, under the practice of this court, be renewed; nor can it now be urged as a pending motion. Duncan vs. Duncan, 29 Ann., 829; Succession of Edwards, 34 Ann., 216. The judgment of this court, however, denying the motion to dismiss, is to be regarded as in the nature of an interlocutory order subject to revision in the rendition of the final judgment on the merits. This being the case, whilst we think the reasons already given for such denial sufficient, we will consider the matter somewhat further in deference to the earnestness with which it is pressed.

The first proposition is that the appeal should be dismissed because, since it was taken, and lodged here, the syndic, being appellee, has obtained his discharge. This is clearly a *non-sequitur*. If the syndic represented all the appellees, for the purpose of the appeal at the time it was taken, and thereafter died or ceased, for some other reason, to represent them, the remedy would be, not to dismiss the appeal, but to make proper parties. If, upon the other hand, the syndic should be the sole appellee, representing himself alone, as, for instance, in a case where the only oppositions are based upon charges of misappropriation of funds by him, and the opponents choose to take devolutive instead of suspensive appeals, from a judgment dismissing their oppositions, and the jurisdiction of this court attaches by reason of the filing of such appeals, it would hardly be claimed that the syndic

could defeat the proceedings against him by obtaining a discharge from the court whose jurisdiction over those proceedings had been divested by such appeals. It is clear that so far as any personal interest which he may have in the matter is concerned, his *status,* as an appellee, when once fixed in this court, can not be changed by anything which may take place elsewhere, except his death, and in case of his death, his place would be supplied by his legal representatives. The question then remains: does he, for the purposes of the appeals, represent all the creditors, and does his discharge by the court *a qua* after the filing of such appeals, in this court, render it necessary that those creditors should severally be summoned and made parties? It is very certain that he does not represent those creditors who appear here as appellants, for, if he did, the appellants and appellee would be united in the same person, and there would be no *contestatio litis* —an extreme view which has not been urged. As a matter of fact, and of law, each of the appellants represents himself here, as each represented himself in the lower court. But in the lower court, these appellants were not the only parties to the litigation. There were other creditors making claims contradictorily with each other, *in concurso,* the only difference between them, so far as the syndic is concerned, being that he approved the claims of some and disapproved those of others; but he could prevent no one of them from representing himself.

They were all cited and were all before the court, each being, at the same time, plaintiff and defendant, and the merits of their respective claims were determined by the same judgment, so that, when an appeal was taken from that judgment, those who were not appellants, were, necessarily, appellees. It is true that they might have been content that the syndic should represent them here, just as they might have been content to have him represent them in the court *a qua,* but they were not obliged to rely upon him for the protection of their interests, nor have they all done so in this case, two of them having appeared by counsel, and one of them having filed a separate motion to dismiss the appeal taken by the city of New Orleans.

That the foregoing views import no novelties into our jurisprudence may be seen by reference to the following authorities:

"Notification of the filing of an account operates as a citation to all persons concerned." Succession of Bougere, 29 Ann., 378.

"The opponents to a tableau of distribution are all plaintiffs and defendants." Succession of Gayle, 27th Ann., 553.

"All parties interested, that the judgment should remain undisturbed, must be made parties to the appeal, or it will be dismissed." I Hen. Dig., Vol. 1, p. 63, No. 7; Louque's Dig., p. 43, V. No. 3, p. 43, No. 1.

"A motion of appeal and bond in favor of the clerk makes all persons interested parties to the appeal." Succession of McKenna, 23rd Ann., 370.

"Since the passage of that act," (requiring appeal bonds to be made in favor of the clerk) "our predecessors have constantly held, and we think correctly, that when an appeal is granted in open court, and the bond is made payable to the clerk of the court, any persons having an interest are, by law, parties to the appeal, *those who are not appellants are appellees.*" Webb vs. Keller, 39 Ann., 59.

The remaining proposition urged in support of this motion to dismiss is, that, since the appeals were taken, they being devolutive, the fund affected by the judgment appealed from has been distributed, and as the claims of the appellants do not amount, in the aggregate, to $2,000, this court is without jurisdiction *ratione materiae.*

The fund offered for distribution, and ordered to be distributed, exceeded $2,000, and the judgment appealed from directed and regulated the distribution of the whole fund. It is not claimed that an appeal did not lie at the moment the judgment was signed, but it is argued that the right to a devolutive appeal was cut off by reason of the subsequent execution of the judgment; this argument being based, to some extent at least, on the circumstance that the fund in dispute consisted, in part, of money, which, being the purchase price of certain effects, which were subject to lessor's privileges, was retained by the lessors, to whom the effects were adjudicated, instead of being paid over to the syndic, and, by operation of the judgment, inured to said lessors before the appeals were taken. The answer, as we think, to this, is, that the right to a devolutive appeal, if taken within a year after the signing of the judgment, is not affected either by the fact or by the time of the execution of such judgment.

It differs from a suspensive appeal only in that it does not suspend the execution of the judgment, and in that, by reason of the possible execution of the judgment pending such appeal, the eventual remedy of the appellant, in case of the reversal of such judgment, may be

different from what it would have been, if he had appealed suspensively.

It is further said, however, that as the claim of the appellants, Paul Jones & Co., is for only $401.77, the fund to be distributed can not be affected beyond that amount, and that the jurisdiction of this court is, therefore, to be determined by the amount claimed. In other words, if we understand the proposition correctly, it is, that no matter what may be the amount of the fund to be distributed, unless the actual amount involved in the appeal, or appeals, from the judgment ordering the distribution, exceeds $2,000, this court has no jurisdiction.

The Constitution provides that the appellate jurisdiction of this court "shall extend to all cases, where the matter in dispute, or the fund to be distributed, whatever may be the amount therein claimed, shall exceed $2,000 exclusive of interest, etc." Art. 85.

The Constitution of 1879 provided that the jurisdiction "should extend to all cases when the matter in dispute or fund to be distributed, whatever may be the amount claimed, shall exceed $1,000, exclusive of interest," etc. (Art. 81.) (This amount being subsequently increased by an amendment.)

By the Constitution of 1868, the jurisdiction extended "to all cases when the matter in dispute shall exceed $500," etc. (Art. 74.)

Under the Constitution of 1868, it was held, although the words, "or fund to be distributed, whatever may be the amount therein claimed," were not used, and the jurisdiction was made to depend upon the amount "in dispute," that, when there was a fund to be distributed, the amount of such fund represented the amount in dispute. Thus, in Succession of Cloney, 29 Ann., 337, Grenon was placed on the account as an ordinary creditor for $350; he filed no opposition, and some oppositions that were filed, were subsequently withdrawn, and the account was homologated; whereupon, Grenon appealed. It was held, on motion to dismiss, that the amount of the fund to be distributed, and not the amount claimed by him, determined the right of appeal; and there are many other cases to the same effect.

Under the Constitution of 1879, the question was presented in the case of Renshaw vs. Stafford, 34th Ann., 1138, where an opponent claimed $1,000, out of a fund of $12,500. The court, at first, held that it was without jurisdiction, and the case was dismissed. Upon rehearing, however, the following views were expressed by Mr. Justice Todd, as the organ of the court, to-wit:

"A careful examination of the authorities bearing on this point
" satisfies us that we erred in our previous decree, dismissing the
" appeal for want of jurisdiction.

"By Article 81 of the Constitution, this court has jurisdiction,
" 'when the matter in dispute, or the fund to be distributed, whatever
" may be the amount therein claimed, shall exceed $1,000, exclusive of
" interest.'

"That part of the article relating to the 'fund to be distributed' was
" formulated to correspond with the jurisprudence on the subject,
" settled by a long line of decisions of this court. These decisions we
" have diligently reviewed, and find that the question of jurisdiction
" on this point, in such cases, is controlled by the amount of the fund
" to be distributed; that *this* constitutes the object of dispute; that if
" the entire fund is claimed by one party, and that sum exceeds the
" amount required to give jurisdiction, that the jurisdiction vests,
" though only a part of that fund is claimed by the other party, and
" that part is below the amount which, under other conditions, is
" necessary to give jurisdiction. In such a contest, it is considered
" that a question has arisen that involves the distribution of the
" *entire fund*, one side demanding the whole of it, and the other deny-
" ing such right, leaving for decision how the fund is to be divided,
" and how disposed of. The decisions are uniform in support of this
" view. 8 L., 167; 11 L., 462; 2 Ann., 190; 29 Ann., 327; 30 Ann., 625;
" 31 Ann., 453.

"In a recent case decided by us, Succession of Duran, not yet
" reported, the majority of the court did not think that the decisions
" above cited were applicable to that case, inasmuch as, by the effect
" of a prior judgment, not appealed from, homologating the account
" and ordering the distribution of the fund wherein not opposed, the
" dispute had been restricted to a sum remaining much below the
" appealable amount.

"Our previous decree, dismissing the appeal, should therefore be
" set aside."

The case thus decided is one of the cases referred to by the court in
the case of Liquor and Tobacco Company, Limited, in Liquidation,
49 Ann., 1455, upon which the mover relies, and both cases differ from
the instant case, in that, in both cases, when the judgments homolo-
gating the accounts, so far as not opposed, become final, there was but
one opponent before the courts, respectively, claiming less than the

appealable amount, and, hence, as it was held, *no concurso,* whereas, in the case now under consideration, when the judgment ordering the distribution was rendered, there were a number of contestants whose claims affected the entire fund, and amounted to considerably more.

We, therefore, find no good reason for changing the ruling heretofore made upon this motion to dismiss.

Another motion was presented, upon the day upon which the case was called for trial, upon its merits, on behalf of Mrs. Widow James Fahey, one of the creditors of the insolvent, to dismiss the appeal of the city of New Orleans, upon grounds which have been already stated. This motion involves a question of fact, which, if we considered that the interests of justice required it, would necessitate the remanding of the case. But, as the case has been, in the meanwhile, argued upon its merits, and as, upon the merits, we have reached a conclusion adverse to the appellant, no good purpose could be subserved by remanding the case in order to solve the question—has the appellant acquiesced in the judgment appealed from? This motion to dismiss is therefore denied.

### On the Merits.

Paul Jones & Co. claim a vendor's privilege on certain goods which were contained in room "N," "Hennen Building," and which had been seized by them under a writ of sequestration, before the cession.

These goods were sold separately, and realized $401.77. The syndic appears to have accorded to the opponents the rank of privileged creditors to the amount of $200, without, however, specifying any particular fund upon which the privilege was to bear. The claim which the opponents make is that the privilege should cover the entire proceeds of the property sold by them to the insolvent; that said property consisted of the liquor found in room "N," and sold separately, and that the proceeds amounted to $401.77, as stated above.

Privileges are *stricti juris,* and can be enforced only when clearly established. The domicile of the opponents is in Louisville, Kentucky; they appear to have conducted their business here through Mr. C. J. Crawford, and it is claimed that the sale to the insolvent of the whiskey in question was a Louisiana contract made by him. The oppositions to the account appear to have been first called for trial in the lower court on December 2nd, 1897, at which time counsel for

Paul Jones & Co. offered to testify as to a conversation which he had, at one time, had with Mr. Crawford, concerning the latter's authority to make binding contracts on behalf of his principals, and as to the contents of a letter which Crawford was said to have written to his principals, presumably upon the subject. This testimony was, however, objected to, and properly excluded, but the judge *a quo* ruled that time should be given to the counsel to prepare his proof. When, therefore, the case was again called for trial, upon December 16th, 1897, counsel for opponents offered in their behalf, the testimony of Lawrence Jones, which had been taken under commission, at Louisville, Kentucky, and also examined Charles Morel, a deputy sheriff, as a witness.

Morel testified that he was charged with the execution of the writ of sequestration under which he seized certain whiskey, pointed out to him by Hamilton, before his cession, and that the whiskey thus seized was the same that was sold separately, by the syndic, after the cession.

There was no other evidence in the record to identify the whiskey thus seized and sold, as whiskey which had been purchased by Hamilton from Paul Jones & Co. Morel had no personal knowledge of the matter, and Hamilton was not called upon to testify. Lawrence Jones testifies quite fully concerning the sale made by Crawford, though it is evident that he was in Louisville, or elsewhere, when the transaction took place, and Crawford was in New Orleans; hence, being asked by the counsel representing the Morris Building Company:

"Q. If you know anything of the matters touching which you have been interrogated, state fully how your knowledge thereof was acquired." He answers:

"My knowledge of the facts stated was acquired through our representative, C. J. Crawford."

This answer, apparently, applies to all the testimony given by the witness, and taken in connection with the fact that he nowhere states that he is, or was, a member of the firm of Paul Jones & Co., renders it difficult to attribute any fixed value to his testimony.

Aside from that, however, his answers upon the main issue are unsatisfactory. Merchants established elsewhere and making sales here, through agents, ought not to be allowed to hold themselves in a position to call such sales binding, when it suits them to do so, and only tentative or conditional agreements, subject to approval, when it will

subserve their interests. This witness was asked, by the counsel for Paul Jones & Co., the following question, to-wit:

"State specifically, whether or not Paul Jones & Co. reserved them-" selves the right to reject the sales made by the said Crawford, as " their agent, to the said Hamilton, or whether the said Crawford was " authorized to bind his said principals absolutely to the sales made " by him to the said C. H. Hamilton and which constitute the indebt-" edness claimed by the said Paul Jones & Co., of the said C. H. " Hamilton."

And to this he answers: "C. J. Crawford was authorized by us to " sell C. H. Hamilton, and spent considerable money with Hamilton to " effect the sale, and as we had authorized him, we felt legally and " morally bound to make the shipment."

It will be observed, however, that he does not *"state specifically,"* as he was requested to do, "whether or not Paul Jones & Co. reserved themselves the right to reject the sales made by Crawford."

It will also be observed that the letter, upon the subject of Craw-ford's authority in the premises, as to the contents of which opponents' counsel proposed to testify, was not produced, nor was there produced any answer to such letter by Paul Jones & Co., and yet, it is apparent that whatever authority Crawford had was conferred upon him by written communications. Upon the other hand, the whiskey in ques-tion was shipped, not to Crawford, to be by him turned over to Ham-ilton, but direct to Hamilton, so that the delivery was made in Kentucky.

Under these circumstances, we are of opinion that the opponents failed to administer the proof necessary to establish the privilege claimed by them.

The city of New Orleans claims $50 and a tax privilege therefor, on the proceeds of certain *"counters, fixtures, wooden partition, etc,"* found in the premises No. 160 Common street.

This claim is based on an assessment on "merchandise, or stock in trade," and the learned counsel representing the city argues that such an assessment entitles the city to a privilege on the proceeds of the "counters, fixtures, and wooden partition," which were sold separately at his request.

It is true, as he says, that Article 233 of the Constitution mentions only movables and immovables, as general divisions of property for purposes of taxation, but it does not preclude subdivisions, such as are

necessary to make an assessment intelligible. And the very bill upon which the opponent sues subdivides movable property as follows, to-wit:

"Horses, Cows, etc."

"Vehicles."

"Merchandise or stock in trade."

"Money at interest, capital, bills receivable."

"Money in possession."

"Shares of stock."

"Furniture, etc."

"Statuary, paintings, etc."

"Diamonds, jewelry, etc."

"Stock or interest in water craft."

"Trackage, etc., of railroads."

"Judgments, suits, and causes of action."

"Franchises, patents, copyrights, trade marks, privileges."

"And charters, all canals and other ways of communications."

"Bonds of all kinds."

It would hardly be claimed that, upon a bill containing such an enumeration, an assessment upon *"horses, cows, etc.,"* would entitle the city to a privilege upon the proceeds of *"vehicles,"* or that an assessment upon *"diamonds, jewelry, etc.,"* would apply to *"bonds of all kinds";* nor, unless we distort the meaning of the very commonplace words "merchandise or stock in trade," do we think that they could be made apply to either "counters, fixtures, or wooden partitions."

If so, then, with equal propriety, they could be applied to the machinery of a planing mill or sash factory; to the plate glass show windows of a jewelry store; and, as far as we can see, to the building in which a merchant conducts his business, and the words "merchandise or stock in trade" would lose the value which they now have, in that they distinguish certain things from other things which also have specific names or terms to designate and differentiate them.

The estate is entirely insolvent; otherwise we might change the judgment rejecting this claim into a judgment recognizing it as an ordinary debt, or dismissing it, as in case of non-suit. As the matter stands, we will affirm the judgment appealed from.

For these reasons, we are of opinion that the oppositions of Paul

Jones & Co. and of the city of New Orleans are not well founded, and that the judgment of the court *a qua* was correct, and it is accordingly affirmed.